UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| ) | Case No. 1:07-cr-98 |
| v. ) | Edgar/Lee |
| ) | |
| GARY M. REYNOLDS, also known ) | |
| as MARCUS REYNOLDS ) | |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

Defendant Gary M. Reynolds ("Defendant"), filed a motion to suppress evidence alleging a constitutional violation based on the stop of his vehicle [Doc. 12]. The United States filed a response in opposition to the motion [Doc. 15]. The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 14], and an evidentiary hearing with respect to the motion was held on December 18, 2007. At the hearing, the Defendant's request for leave to file a supplemental, post-hearing memorandum supporting the motion to suppress was granted, and the Defendant timely filed his memorandum on January 7, 2008 [Doc. 21].[1] The motion is now ripe for review.

The Defendant correctly summarizes the crux of the motion as coming down to whether "the officer could see what he says he could see" to support the traffic stop of Defendant's vehicle [Doc. 21 at 2]. In summary, I find the officer's testimony was credible, and, therefore, there was no

---

[1] The United States was allowed to respond, at its option, to the supplemental filing of Defendant by January 11, 2008. The United States made no supplemental filing.

constitutional violation with respect to the stop of Defendant's vehicle. For the reasons set forth herein, I **RECOMMEND** that Defendant's motion [Doc. 12] be **DENIED**.

**II.    Evidence**

It is undisputed that Officer Brent Hubbard of the Kimball (Tennessee) Police Department stopped the Defendant between 11 p.m. and midnight on the night of June 29, 2007. Defendant was stopped after he proceeded past two stop signs and crossed the four-lane roadway to complete a left turn onto Highway 72 at the intersection of Sweetens Cove Road and Highway 72. It is also undisputed the Defendant was driving on a suspended license, had no car insurance, and had a container of beer in his vehicle. Officer Hubbard, in a search incident to arrest, found a loaded handgun under the driver's seat of Defendant's vehicle. Defendant was subsequently indicted as a felon in possession in violation of 18 U.S.C.§ 922(g)(1).

The only significant factual dispute involves the bases for the stop. The United States argues Defendant was stopped after Officer Hubbard saw Defendant roll through stop signs and also saw a tail light defect as he followed the Defendant's vehicle to make the stop.[2] Defendant contends Officer Hubbard was too far away at the time he allegedly observed the stop sign violations to be credible [Doc. 21 at 2-3]. The Defendant further contends the videotape of the stop is the best evidence of what Officer Hubbard could observe and that it contradicts the officer's testimony about the stop as it does not support that Defendant rolled through the stop signs or had any sort of tail light defect [*id.*].

During the hearing, the United States offered the sole witness to testify, Officer Hubbard.

---

[2] It is undisputed that either infraction, if observed by Officer Hubbard, constitutes a violation of Tennessee's traffic laws sufficient to justify the stop.

The Defendant offered no testimony, but did introduce daytime photographs of the scene (Defendant's Exhibits 1 & 2) and the videotape of the stop (Defendant's Exhibit 3) during the cross examination of Officer Hubbard.

Officer Hubbard testified as follow: He has some five years experience as a police officer, and has been with the Kimball Police Department for over a year as a road patrol officer on the 4 p.m. to 4 a.m. shift. On the night at issue, Officer Hubbard was traveling west on Highway 72 when he observed Defendant's vehicle roll through two stop signs: one at the intersection of Old Jasper Road and Sweetens Cove Road and one at the adjacent intersection of Sweetens Cove Road and Highway 72. Officer Hubbard could not see who was in the vehicle, but he saw the vehicle turn left and travel east down Highway 72 after rolling through the stop signs. As he was traveling in the opposite direction, Officer Hubbard accelerated in order to turn around and stop the vehicle for rolling through the stop signs.

As he pulled behind Defendant, Officer Hubbard noticed a defect in the Defendant's tail lights because the left "running light" appeared to be dimmer than the light on the right. He believed the vehicle's tail lights violated Tennessee law, but he had already decided to stop the vehicle for rolling through the stop signs. Officer Hubbard filled out the paperwork for the stop on the night at issue (which was by then the early morning hours of June 30, 2007), noting he stopped the Defendant for failing to stop at a stop sign and for driving with a tail light malfunction.[3]

On cross examination, Officer Hubbard agreed that Highway 72 is the main roadway between Kimball and South Pittsburg and that it usually has high traffic because of the many restaurants and stores located along the highway. He noted, however, that on the night and time at

---

[3] Government's Exhibit 1 is the citation paperwork introduced at the hearing.

issue, there was little-to-no traffic. While Officer Hubbard was some distance from the stop signs, he testified he clearly saw the Defendant's vehicle roll through the stop signs.

The videotape of the stop, which was taken by equipment located in Officer Hubbard's patrol car, was played during the hearing and Officer Hubbard also narrated the stop. Officer Hubbard narrated when Defendant's vehicle rolled through the stop signs on the videotape. In addition, he testified he could see the Defendant roll through the stop signs far more clearly on the night at issue than is shown on the videotape. Officer Hubbard explained that the video camera in his patrol car is focused on items close to the hood--not distant objects. While acknowledging he is not an expert on the patrol car video equipment, he testified that, based on his experience and the comments of fellow officers, the video equipment does not show distant objects as well as it shows objects nearby.

At the request of the Defendant, I have carefully viewed the videotape. As reflected on the videotape, when the Defendant pulls onto Highway 72 from the area of the stop signs, Officer Hubbard appears to accelerate, quickly turns around and follows Defendant. When Officer Hubbard initially approached Defendant after the stop, he told Defendant the reasons for the stop were that the Defendant "didn't come to a complete stop back there" and that one of his brake lights was "funky." This communication was also confirmed in Officer Hubbard's testimony. Also on the videotape is a demonstration of the brake lights of the Defendant's vehicle. Officer Hubbard essentially agreed the videotape does not show that one tail light was dimmer than the other when the brake lights were applied in the demonstration. Officer Hubbard speculated that perhaps the dimmer light could not be seen because the turn signal was on during the demonstration. Officer Hubbard reiterated, however, that when he pulled behind the Defendant he noticed one running light

4

was dimmer than the other.

**III.    Analysis**

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated by a challenged search or seizure. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). It is the government's burden, however, to demonstrate by a preponderance of the evidence that a particular search and seizure is constitutional. *See United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004).

"An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] principles." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir.), *cert. denied*, 127 S. Ct. 542 (2006). To determine whether such a stop comports with the Fourth Amendment, the court must first determine whether, under the totality of the circumstances, there was a proper basis for the stop. *See United States v. Garcia*, 496 F.3d 495, 504-05 (6th Cir. 2007).[4] If the stop was unlawful, then the "fruit of the poisonous tree" doctrine might require exclusion of any evidence discovered. *See United States v. Carter*, 14 F.3d 1150, 1154 (6th Cir. 1994).

Defendant asserts he was stopped without probable cause or reasonable suspicion because the United States has not shown he committed a traffic infraction. The United States appears to argue this stop meets the reasonable suspicion of criminal activity standard or the probable cause standard because Officer Hubbard stopped Defendant after seeing him commit at least one traffic

---

[4] If the stop was proper, the court typically moves to the second step of determining whether the law enforcement officer exceeded the permissible scope or duration of the stop. *Id.* The only issue here, however, is whether the stop was proper as Defendant agreed during the hearing he is not contesting the scope or duration of the detention after the stop.

infraction. As the United States mentions both standards, I will analyze this matter under the more stringent probable cause standard, without addressing which standard applies.

Stopping a vehicle and detaining its occupants is considered a seizure for purposes of the Fourth Amendment. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000); *United States v. Westmoreland*, 224 F. App'x 470, 473 (6th Cir. 2007) (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)). It is well-settled law that the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). The police may lawfully detain a vehicle and conduct a brief stop of its occupants where there is probable cause to believe a traffic violation has occurred, even if the traffic offense is minor and the officer has additional subjective reasons for making the stop. *Id.* at 810, 813; *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003).

"Probable cause is generally defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (citation and quotation marks omitted). The doctrine of probable cause represents "a flexible, commonsense standard that requires that the facts available to the officer would warrant a man of reasonable caution" to believe a crime has occurred. *Id.* (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)) (brackets omitted). A traffic stop must not be "unreasonable" under the totality of the circumstances. *Whren*, 517 U.S. at 810, 812-13.

In order to find for the Defendant on the issue of the alleged traffic infraction, I would have to find that Officer Hubbard's testimony about what he observed is not credible. To the contrary, after carefully observing Officer Hubbard's testimony and demeanor, I **FIND** his testimony credible, logical and consistent. Officer Hubbard did not know who was driving the vehicle at the time he

initiated the stop. No testimony was offered to suggest Officer Hubbard had any reason to stop the vehicle--other than the reasons he testified to concerning the Defendant's failure to come to a complete stop at a stop sign prior to entering Highway 72.[5] The videotape confirms Officer Hubbard quickly informed Defendant about the reasons he was stopped, including Defendant's failure to stop and a problem with the vehicle's lights.

The Defendant presented no testimony to show that he did not roll through one or both stop signs or have one light dimmer than the other. Instead, Defendant argues the videotape is the best evidence of the bases for the stop under Fed. R. Evid. 1002 and that it discredits Officer Hubbard's testimony about what he saw and why he stopped Defendant.[6] Contrary to Defendant's argument, whether the videotape is the best evidence of the stop under Fed. R. Evid. 1002 does not determine the outcome of his motion. First, the rules of evidence are not strictly applicable to pretrial suppression hearings. *See United States v. Killibrew*, 594 F.2d 1103, 1105 (6th Cir. 1979) (citing

---

[5] Of course, even if Officer Hubbard had another reason for stopping the vehicle, courts are directed to disregard an officer's subjective intentions and instead to determine whether the traffic stop itself was justified by probable cause. *See, e.g., Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an officer's state of mind (except for the facts that he knows ) is irrelevant to the existence of probable cause); *Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (an officer may conduct "a traffic stop for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct."); *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006) (same).

[6] Initially, the Defendant also argued the stop was not proper because the alleged failure to stop at a stop sign does not appear on the handwritten complaint completed on the night of the arrest by Officer Hubbard [Doc. 12]. Defendant appears to have abandoned the argument that the paperwork reflects only a "light law violation" and not a stop sign violation as a basis to discredit Officer Hubbard's testimony [*see* Doc. 21]. To the extent such an argument has not been abandoned, the citation does reflect a traffic infraction of failing to stop at a stop sign, and thus the paperwork completed on the night of the arrest does not support Defendant's position [*see* Government's Exhibit 1].

*United States v. Matlock*, 415 U.S.164 (1974)). *See also* Fed. R. Evid. 104(a) & 1101(d).

Second, and more importantly, I have carefully examined the videotape and I have given it less weight than Officer Hubbard's credible testimony as it relates to the issue of whether Officer Hubbard had probable cause to believe Defendant rolled through a stop sign. There may be cases where a videotape could discredit an officer's contrary testimony about events depicted on the videotape, but that is not the case here. Due to the glare, the darkness, and the equipment's limitations with respect to recording events at a distance, the videotape does not answer whether Defendant stopped or rolled through the stop signs or whether Defendant had a tail light that could have been viewed as dimmer as he traveled down the road. I cannot tell from the videotape whether Defendant came to a complete stop or rolled through one or both of the stop signs. Indeed, it is difficult to even determine if the Defendant's vehicle is visible at both stop signs on the videotape. Likewise, I do not see a dimmer tail or brake light. It is, however, reasonable to accept Officer Hubbard's credible testimony he was able to observe Defendant's vehicle, which had its lights on, roll through a stop sign at night from the distance at issue even though the videotape does not clearly reflect what happened at the stop signs given the equipment's limitations on recording events at a distance.

Thus, I **FIND** the United States has met its burden of demonstrating Officer Hubbard had probable cause to stop Defendant for, at least, the traffic infraction of rolling through a stop sign. As a result, it is not necessary to also determine whether Officer Hubbard's perception of the tail lights constitutes an additional basis for the stop.

In summary, I **FIND** that Officer Hubbard's testimony is credible and provides probable cause for the stop even though I cannot determine a traffic infraction took place by looking at the

8

videotape. The videotape does not discredit Officer Hubbard's testimony or result in evenly balanced evidence on the issue at hand under the circumstances. As Officer Hubbard had probable cause to believe a traffic violation had occurred, I **CONCLUDE** the resultant stop was not unlawful and did not violate the Defendant's Fourth Amendment rights. *See United States v. Davis,* 430 F.3d 345, 352 (6th Cir.2005).

## IV. Conclusion

For the reasons stated herein, I **RECOMMEND** that Defendant's motion [Doc. 12] be **DENIED**.[7]

                          s/*Susan K. Lee*
                          SUSAN K. LEE
                          UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).